Glenn W. Binder, appellant, v.
Laura L. Binder, appellee.
___ N.W.2d ___

Filed June 26, 2015.    No. S-14-783.

1. **Judgments: Alimony: Appeal and Error.** Domestic matters such as
   alimony are entrusted to the discretion of trial courts. An appellate court
   reviews a trial court's determinations on such issues de novo on the
   record to determine whether the trial judge abused his or her discretion.
   Under this standard, an appellate court conducts its own appraisal of the
   record to determine whether the trial court's judgments are untenable
   such as to have denied justice.
2. **Child Support: Rules of the Supreme Court.** The Nebraska Child
   Support Guidelines do not apply if the parties have no minor children.
3. **Divorce: Alimony.** Under Neb. Rev. Stat. § 42-365 (Reissue 2008),
   courts should consider four factors relative to alimony: (1) the circum-
   stances of the parties, (2) the duration of the marriage, (3) the history of
   contributions to the marriage, and (4) the ability of the supported party
   to engage in gainful employment without interfering with the interests of
   any minor children in the custody of each party.
4. ____: ____. Beyond the specific criteria listed in Neb. Rev. Stat.
   § 42-365 (Reissue 2008), in considering alimony upon the dissolution of
   marriage, a court should also consider the income and earning capacity
   of each party, as well as the general equities of the situation.
5. **Alimony: Appeal and Error.** In reviewing an alimony award, an appel-
   late court does not decide whether it would have awarded the same
   amount of alimony as the trial court. Instead, it decides whether the trial
   court's award is untenable such as to deprive a party of a substantial
   right or just result.
6. **Alimony.** The main purpose of alimony is to assist a former spouse for
   a period necessary for that individual to secure his or her own means
   of support.
7. ____. In awarding alimony, reasonableness is the ultimate criterion.

8. ____. A court may consider all of the property owned by the parties—marital and separate—in decreeing alimony.
9. **Judgments: Evidence: Appeal and Error.** If credible evidence is in conflict on a material issue of fact, an appellate court on de novo review considers and may give weight to the circumstance that the trial judge heard and observed the witnesses and accepted one version of the facts than another.

Appeal from the District Court for Pawnee County: Daniel E. Bryan, Jr., Judge. Affirmed.

Claude E. Berreckman, Jr., of Berreckman & Davis, P.C., for appellant.

Andrew M. Ferguson, of Carlson & Burnett, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

The court dissolved the marriage of nonagenarians Laura L. Binder and Glenn W. Binder and ordered Glenn to pay alimony. On appeal, Glenn argues that the amount of alimony is a presumptive abuse of discretion because it drives his net income below the poverty line in the Nebraska Child Support Guidelines.[1] Glenn cites *Gress v. Gress*,[2] where we held that the subsistence limitation in the guidelines also applied to an alimony award. Laura argues that *Gress* does not apply here because, unlike the parties in *Gress*, she and Glenn do not have any minor children.

We conclude that the guidelines do not apply because Laura and Glenn have no minor children. So, the amount of alimony is not a presumptive abuse of discretion because it pushes Glenn's net income under the poverty threshold in the

---

[1] Neb. Ct. R. § 4-218 (rev. 2015).

[2] *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007).

guidelines. Nor can we say that the award is an abuse of discretion under the circumstances. We therefore affirm.

## BACKGROUND

Laura and Glenn married in 1982. Neither was the other's first spouse, and their marriage did not produce any children. At the time of trial, Laura was 95 and Glenn was 94.

Glenn is retired now, but he used to farm and operate a fertilizer business. Laura did not work outside the home. According to Glenn, Laura did not help in the fields, although he stated that she might have retrieved parts for his fertilizer business. He testified that she helped with the fertilizer business only on "a minimal scale."

Regarding her contributions to the marriage, Laura testified that she took messages to Glenn, retrieved parts, prepared lunches, and helped move livestock. She testified that she answered the telephone for Glenn's fertilizer business, and even put a line in the bathroom so that she could take calls while dressing. Glenn denied that Laura installed a telephone for this purpose. Laura admitted that she did not help as much after Glenn's daughter and son-in-law, Karin and Bruce Droge, took over the farming operation.

Laura and Glenn initially lived in a brick farmhouse. In 1985, the Droges moved into the farmhouse and Laura and Glenn moved into a mobile home. Laura stated that she paid $25,000 for the mobile home. Both Laura and Glenn estimated that the mobile home was now worth $15,000.

In 1986, Glenn and the Droges executed a farm lease whereby Glenn rented all the farmland he owned to the Droges. The lease states that it will be effective for 10 years, but Bruce testified that he and Glenn "continued it on a verbal basis" after 1996. Bruce testified that he currently pays an annual rent of about $100 per acre.

Laura and Glenn maintained separate checking accounts during their marriage, and each paid half of the couple's expenses. Over the years, Laura made numerous loans to Glenn. Glenn testified that he did not owe Laura any money

at the time of trial, but Laura thought that he owed more than $25,000.

Glenn stated that Laura moved into a nursing home in December 2012. Glenn said that before Laura moved, she was "incapacitated" and confined to a wheelchair for 2 years and he cared for her during this period. Glenn continued to live in the mobile home after Laura left.

Laura initially used her savings to pay for her nursing home care. After 10 months, she exhausted her savings and Glenn began paying $3,200 per month. Glenn testified that he has paid about $30,000 to the nursing home and that he had to borrow money from the Droges to do so.

Laura has a monthly income of $2,927.40, which consists of her Social Security benefit, a long-term care insurance benefit, and a small pension from her prior husband. Laura has monthly expenses of $6,230, of which $5,369 is for the nursing home. So, she testified that she ran a monthly deficit of $3,302.60. Laura has no assets beyond a checking account worth about $5,000.

According to Glenn, his monthly income is $2,890.73, about $1,700 of which is rental income. The remainder is his Social Security benefit.

Glenn owns several farms and part of a residential lot. He stated that he is the sole trustee of a trust that "holds" the four parcels of real estate for him. Glenn said that he "can cancel [the trust] at any time, basically." Statements from the Pawnee County assessor for tax year 2013 show that Glenn, as the trustee of an unnamed trust, was assessed taxes on four pieces of real estate totaling about 222 acres. The combined taxable value was nearly $560,000. Laura and Glenn agreed that the real estate is Glenn's premarital property.

The court dissolved the marriage and ordered Glenn to pay $3,302.60 per month in alimony. The court explained that the alimony was "to offset any costs [Laura] has at the nursing home." The decree awarded the mobile home to Glenn but required him to pay Laura $15,000 for her interest. The court decided that the "loan issue" was "a wash."

## ASSIGNMENT OF ERROR

Glenn assigns that the court erred by ordering him to pay an amount of alimony that drives his net monthly income below the poverty threshold in the Nebraska Child Support Guidelines.

## STANDARD OF REVIEW

[1] Domestic matters such as alimony are entrusted to the discretion of trial courts.[3] An appellate court reviews a trial court's determinations on such issues de novo on the record to determine whether the trial judge abused his or her discretion.[4] Under this standard, an appellate court conducts its own appraisal of the record to determine whether the trial court's judgments are untenable such as to have denied justice.[5]

## ANALYSIS

Glenn argues that the amount of alimony is "presumptively an abuse of discretion" because it drives his net income below the poverty threshold in the Nebraska Child Support Guidelines.[6] He contends that the court did not rebut this presumption because it "failed to make any specific findings as to why such a deviation was warranted."[7] Laura argues that the guidelines are irrelevant because she and Glenn do not have any minor children.

In a case involving minor children, we held that the amount of alimony must not force the obligor's net income below the poverty line unless the court specifically finds that such an award is warranted. In *Gress v. Gress*,[8] the court dissolved the marriage of Pamela Gress and Patrick Gress and ordered Patrick to pay child support of $1,224 per month. Although

---

[3] See *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015).

[4] See *id.*

[5] See *id.*

[6] Brief for appellant at 4.

[7] *Id.*

[8] *Gress v. Gress, supra* note 2.

Patrick had a net income of only $1,433.85 after subtracting his child support obligation, the court also ordered him to pay alimony of $1,000 per month.

Patrick argued that the amount of alimony was a presumptive abuse of discretion because it left him below the poverty line in the child support guidelines. At the time, paragraph R of the guidelines stated that a parent's support obligation could not reduce his or her monthly net income below the poverty line, which was $851 for one person. Paragraph R is now § 4-218, which provides:

> A parent's support, child care, and health care obligation shall not reduce his or her net income below the minimum of $981 net monthly for one person, or the poverty guidelines updated annually in the Federal Register by the U.S. Department of Health and Human Services under authority of 42 U.S.C. § 9902(2), except minimum support may be ordered . . . .

The guidelines—then in paragraph M and now in Neb. Ct. R. § 4-213—also instruct courts to determine alimony from the income left after the court establishes child support.

We decided in *Gress* that the subsistence limitation in the child support guidelines also applied to Patrick's alimony obligation.[9] So, as a "mirror of our holding on child support under paragraph R," an alimony award that drove Patrick's net income below the poverty line was presumptively an abuse of discretion unless the court specifically found that "conformity with paragraph R would work an 'unjust or inappropriate' result."[10] We emphasized that the guidelines prioritized child support over alimony. Logically, if child support could not drive the obligor's net income below the poverty line, then neither could alimony.

[2] But we conclude that § 4-218 does not apply because Laura and Glenn do not have any minor children. Our holding in *Gress* was "buttressed by the structure" of the child

---

[9] *Id.* See, also, *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013).

[10] *Gress v. Gress, supra* note 2, 274 Neb. at 702, 743 N.W.2d at 80-81.

support guidelines.[11] The aim of the guidelines is to set child support payments in light of the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes.[12] The guidelines have no application—structural or otherwise—when the parties have no children to support. We derived the rule in *Gress* from the logic of the guidelines themselves. In cases where the guidelines are inapposite, so is their logic.

Furthermore, we are wary of grafting the guidelines' method of calculating net income onto cases that involve only alimony. Before awarding child support, the guidelines require courts to make a detailed calculation of the parties' income and expenses.[13] In contrast, we have said that there is no mathematical formula by which alimony awards can be precisely determined.[14] Although detailed findings are certainly not unwelcome, we are not eager to mandate the same requirements in alimony cases.

So, the amount of alimony is not a presumptive abuse of discretion even though it appears to drive Glenn's net income below the subsistence limitation in the child support guidelines. But that does not end our inquiry. We must still determine whether the amount of alimony is unreasonable under the circumstances of this case.

[3,4] Under Neb. Rev. Stat. § 42-365 (Reissue 2008), courts should consider four factors relative to alimony: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party.[15] Beyond the specific criteria listed

---

[11] *Id.* at 701, 743 N.W.2d at 80.

[12] See, Neb. Ct. R. § 4-201; *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

[13] See Nebraska Child Support Guidelines, worksheet 1.

[14] *Bryan v. Bryan*, 222 Neb. 180, 382 N.W.2d 603 (1986).

[15] See *Anderson v. Anderson, supra* note 3.

in § 42-365, a court should also consider the income and earn-ing capacity of each party, as well as the general equities of the situation.[16]

[5-7] In reviewing an alimony award, an appellate court does not decide whether it would have awarded the same amount of alimony as the trial court.[17] Instead, it decides whether the trial court's award is untenable such as to deprive a party of a substantial right or just result.[18] The main purpose of alimony is to assist a former spouse for a period necessary for that individual to secure his or her own means of support.[19] Reasonableness is the ultimate criterion.[20]

[8] Applying these factors, we cannot say that the amount of alimony is an abuse of discretion. Glenn sought to dis-solve his nearly 32-year marriage to Laura after she began incurring expenses for essential nursing home care that are well beyond her means. Laura did not work outside the home during the marriage, she is not employed now, and there is no evidence that she has untapped earning capacity. Similarly, Glenn is retired and has no wage income. But while Laura has exhausted nearly all her assets, Glenn has the power to dispose of more than 200 acres of farmland. The land is not irrelevant to alimony even though it is Glenn's premarital property. A court may consider all of the property owned by the parties—marital and separate—in decreeing alimony.[21]

[9] As to disputes over matters such as Laura's contribu-tions to the marriage, we note that the district court was in the best position to judge the witness' credibility. Although

---

[16] See *id.*

[17] See *id.*

[18] See *id.*

[19] See *id.*

[20] See *id.*

[21] See, *Bauerle v. Bauerle*, 263 Neb. 881, 644 N.W.2d 128 (2002); *Ainslie v. Ainslie*, 249 Neb. 656, 545 N.W.2d 90 (1996); 3 Mercedes Samborsky & Catherine N. Carroll, Family Law & Practice § 35.03[1][b] (Arnold H. Rutkin ed., 2014).

our review is de novo, if credible evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the circumstance that the trial judge heard and observed the witnesses and accepted one version of the facts than another.[22] This rule is particularly apt here because both Laura and Glenn had some trouble testifying and the record does not show to what extent their difficulties were cognitive, auditory, or other.

## CONCLUSION

The Nebraska Child Support Guidelines do not apply because the parties have no minor children. Thus, the fact that the amount of alimony apparently exceeds the poverty line in the guidelines does not make the award a presumptive abuse of discretion. Applying the factors for reviewing alimony awards, we conclude that the court did not abuse its discretion.

AFFIRMED.

---

[22] See, e.g., *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000).