Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/22/2022 09:07 AM CDT

ERIC J. VYHLIDAL, APPELLANT, V.
NESSA A. VYHLIDAL, APPELLEE.

___ N.W.2d ___

Filed April 28, 2022.    No. S-21-736.

1. **Divorce: Judgments: Appeal and Error.** The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.

2. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.

3. **Divorce: Property Settlement Agreements: Final Orders.** A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including a settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.

4. **Divorce: Property Settlement Agreements: Parent and Child: Judgments.** A judgment including both a settlement agreement and a parenting plan is construed as an integrated judgment.

5. **Divorce: Judgments: Intent.** The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation.

6. ____: ____: ____. Effect must be given to every part of a decree, including such effect and consequences that follow the necessary legal implication of its terms, although not expressed.

7. **Child Custody.** A determination of legal custody is a mandatory and indispensable part of a parenting plan pursuant to Neb. Rev. Stat. § 43-2929 (Reissue 2016).

8. ____. Under the Parenting Act, joint legal custody involves mutual authority and responsibility of the parents while legal custody does not.

9. **Child Custody: Words and Phrases.** The definitions in the Parenting Act of "legal custody" and "joint legal custody" are terms of art having clear and unambiguous meaning.

10. ____: ____. In the absence of an explicit contrary definition in a parenting plan, the term "joint legal custody" must be construed according to its statutory definition in the Parenting Act.

11. **Child Custody.** In a child custody case, the decision of where a child will reside is a fundamental decision affecting the child's welfare.

12. ____. In a child custody case, the decision of where a child will attend school is a fundamental decision.

13. **Courts.** A maxim sanctioned by centuries of experience is that ignorance of the law is no excuse.

14. **Courts: Presumptions.** Everyone is presumed to know the law.

15. **Contempt: Words and Phrases.** Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order.

16. **Contempt: Proof: Presumptions.** Outside of statutory procedures imposing a different standard or an evidentiary presumption, the complainant must prove all elements of contempt by clear and convincing evidence.

17. **Courts: Appeal and Error.** A district court by definition abuses its discretion when it makes an error of law.

18. **Contempt.** Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party.

19. **Contempt: Sentences.** A civil sanction is coercive and remedial; the contemnors carry the keys of their jail cells in their own pockets, because the sentence is conditioned upon continued noncompliance and is subject to mitigation through compliance.

20. **Contempt: Costs: Attorney Fees.** Costs, including reasonable attorney fees, can be awarded in a contempt proceeding when there has been a finding of contempt.

Appeal from the District Court for Garfield County: Mark D. Kozisek, Judge. Reversed and remanded with directions.

Loralea L. Frank and Nathan P. Husak, of Bruner, Frank, Schumacher & Husak, L.L.C., for appellant.

Michele J. Romero and Vikki S. Stamm, of Stamm, Romero & Associates, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

An integrated marital dissolution decree, settlement agreement, and parenting plan granted joint legal and physical custody of a minor child to Eric J. Vyhlidal and Nessa A. Vyhlidal. Over Eric's objection and without obtaining a modification of the decree, Nessa moved the child to another school in a distant town. The district court declined Eric's request for a contempt citation. On appeal, we reversed the denial and remanded the cause for an evidentiary hearing.[1]

After issuing the citation and holding an evidentiary hearing on remand, the court below found no violation or willfulness. Eric again appeals. We conclude that the district court erred in its interpretation of the decree and its assessment of Nessa's actions. We reverse the order and remand the cause with directions and for further proceedings consistent with this opinion.

## II. BACKGROUND

Our background section consists of four parts. We begin by reciting pertinent conclusions from our first opinion. Second, we summarize the essential facts elicited at the evidentiary hearing. We then recall specific provisions of the integrated decree. Finally, we summarize the district court's decision and reasoning.

### 1. Prior Appeal

In the parties' prior appeal, we determined that the district court abused its discretion in denying Eric's motion for

---

[1] See *Vyhlidal v. Vyhlidal*, 309 Neb. 376, 960 N.W.2d 309 (2021).

an order to show cause.[2] After citing the definition in the Parenting Act[3] of "[j]oint legal custody,"[4] we stated:

> Here, the parenting plan, developed by the parties and approved by the court, clearly indicates that the parties were to share joint legal custody of the minor child, and neither party was granted exclusive final decisionmaking authority. As a result, it is undisputed that the parties share mutual authority for making fundamental decisions regarding the minor child's welfare, including choices regarding education, such as where the minor child will attend school.[5]

We also noted that we had classified the decision of where a child will attend school as a fundamental decision.[6]

We concluded that the denial of Eric's motion for an order to show cause was an abuse of discretion that unfairly deprived Eric of his rights as a joint legal custodian of the minor child. We stated: "Whether Nessa's unilateral decision to change the child's school is a willful violation of the decree . . . is a matter to be considered at an evidentiary hearing where Eric can offer evidence to demonstrate both that a violation of the court order occurred and that the violation was willful."[7] Thus, we reversed, and remanded for further proceedings.

## 2. Evidentiary Hearing

After spreading our mandate, the district court set the matter for a hearing. It ordered Nessa to show cause why she should not be held in contempt of court for willful violation of the decree.

---

[2] See *id.*

[3] Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016 & Cum. Supp. 2020).

[4] See § 43-2922(11).

[5] *Vyhlidal v. Vyhlidal, supra* note 1, 309 Neb. at 382, 960 N.W.2d at 314.

[6] See *id.*

[7] *Id.* at 383, 960 N.W.2d at 314.

After the hearing, the court characterized the facts as "simple and relatively undisputed." In late June 2020, Nessa informed Eric that she intended to move the child's residence and change the child's school. Eric objected. Nessa proceeded with moving and enrolling the child in a new school. She moved from Burwell, Nebraska, to Springfield, Nebraska, on August 8. She moved the child there on August 12. Two days later, she then enrolled the child in the Springfield school. Nessa admitted that she did so without Eric's permission.

The parties attended mediation. Nessa testified that she "submitted paperwork for Central Mediation" in June 2020. The parties' mediation session occurred, using video conferencing, on September 14. They failed to reach an agreement.

At the hearing, Nessa argued that she complied with the parenting plan. Her position rested on two facts: She notified Eric that she planned to change the child's residence prior to doing so and attempted to reach an agreement through mediation.

### 3. Integrated Decree, Settlement Agreement, and Parenting Plan

A June 2018 decree dissolved the parties' marriage. The decree awarded them "joint legal and physical custody" of their child, born in 2013. The decree further ordered the parties to abide by the terms of their mediated parenting plan that was attached to a marital settlement agreement. The marital settlement agreement stated that the parties agreed to "share legal and joint physical custody . . . as outlined in the Parenting Plan."

The settlement agreement contained an integration clause. Paragraph 12 stated, in pertinent part, that it "constitute[d] a complete agreement and any and all other agreements, whether written or oral, which precede the date as set forth below are hereinafter superseded and are null and void."

The parenting plan contained several provisions directly applicable to this appeal, which focuses on legal custody. Those provisions are as follows:

**B. CUSTODY/RESIDENCE:** The parents agree to Joint Legal Custody (decision-making).

. . . .

**K. DECISION MAKING:** The parents will discuss matters concerning the child, such as health and medical, school related problems and decisions, and any behavioral or disciplinary issues that could impact both households.

. . . .

**P. CHANGE OF CHILD'S RESIDENCE:** Both parents shall provide notification to the other if s/he plans to change the residence of the child. Neither parent may move the child outside of the [S]tate of Nebraska without permission of the Court. If intending to move that parent must first:

• Make written application to the Court at least 45 days in advance, including the proposed changes to the parenting time schedule and costs of transportation[;]

• Give notice of the application and hearing to the other parent; and,

• Establish that the move is in the best interest of the child.

. . . .

**R. REMEDIATION:** The parents agree that should a future dispute arise concerning their child or this agreement which they are unable to resolve, they will first attempt to mediate a solution through mediation prior to filing legal action.

**S. ATTORNEY REVIEW:** We both acknowledge that this parenting plan accurately reflects our agreements reached on May 16, 2018 and represent we each have had ample opportunity to discuss this parenting plan with our attorneys. Each parent certifies they understand the terms contained herein.

In this appeal, the parties dispute the nature of their legal custody of their child—particularly, decisionmaking regarding the child's school and residence. Physical custody, parenting

time, and the change of a parent's residence are largely irrelevant here.

But for the sake of completeness, we quote the parenting plan provisions directly bearing on physical custody, parenting time, and parent's residence, as follows:

**B. CUSTODY/RESIDENCE:** . . . .

They also agree that <u>Mom and Dad</u> will have <u>Joint Physical Custody.</u>

**C. REGULAR TIME-SHARING:**

[The child] will be with Mom during the school year, except for one night each week from after school until 8 p.m. Dad will give Mom 2 weeks' notice of what night he will exercise that parenting time.

The parents agree to alternate weekends, with Dad having [the child] two weekends in a row from Friday at 6 p.m. until Sunday at 6 p.m., then Mom having [the child] the third weekend. On the Sundays when Mom works at night, Dad will have [the child] until he drops him off for school on Monday morning. The parents shall follow a 2 weekend with dad/1 weekend with mom rotation. This weekend rotation shall resume the first Friday after school resumes with dad commencing the weekend rotation annually.

The parents agree that they will work together to adjust [the child's] schedule if their time with [the child] interferes with the work schedule.

Neither parent may make plans for the child during the other parent's parenting time without talking with that parent in advance and obtaining that parent's consent.

. . . .

**O. CHANGE OF PARENT'S RESIDENCE:** In the event that one of the parents plan to change his/her residence, that parent shall notify the other parent of such change of residence. If one of the parents is living or moving to an undisclosed location because of safety concerns, the address or return address shall only include the county and state.

### 4. District Court's Decision and Rationale

The district court entered an order finding that Nessa did not violate the parenting plan. It therefore vacated the order to show cause.

The court's rationale relied upon its interpretation of the decree, which focused on the parenting plan. The court reasoned: "One must look to the Parenting Plan itself and not statutory definitions or labels . . . . For it is the violation of the Parenting Plan at issue, not the violation of a statute or legal definition found in a statute."

The district court further stated: "[T]he parties did not define 'joint legal custody' in the same manner as the Court. The parties chose the words, 'Joint Legal Custody (decision-making)'. They then chose to describe 'Decision Making' as parents discussing matters concerning [the child] such as school related decisions."

The parties' description of "joint legal custody," the court reasoned, required discussion between the parties and was silent on mutual authority and the parties' responsibility for making mutual fundamental decisions regarding the child's welfare. The court, essentially adopting Nessa's argument, determined that Eric failed to establish Nessa violated the parenting plan—reasoning that Nessa told Eric she was moving, that they discussed the move, and that they attempted to mediate a solution.

The district court, for the sake of completeness, discussed the willful aspect of contempt. The court determined that the violation had to be committed with subjective knowledge and that Nessa did not willfully violate the parenting plan.

Eric filed a timely appeal, which we moved to our docket.[8]

### III. ASSIGNMENTS OF ERROR

Eric assigns that the court abused its discretion by failing to hold Nessa in contempt for three reasons: (1) The court's interpretation of the parenting plan was erroneous, (2) the

---

[8] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

court failed to find Nessa violated the parenting plan, and (3) the court abused its discretion by not finding Nessa's violation was willful.

## IV. STANDARD OF REVIEW

[1] The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.[9]

[2] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.[10]

## V. ANALYSIS

Eric contends that the district court abused its discretion when it failed to hold Nessa in contempt for moving and enrolling the child into a new school despite his having joint legal custody and objecting to the change. We start by determining what the decree required. Then, we apply that interpretation to the violations asserted by Eric in determining whether Nessa violated the decree and, if so, whether the violation was willful.

### 1. INTERPRETATION OF DECREE

[3-6] Rules for interpreting a decree are well known. A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including a settlement agreement incorporated therein, is determined as a matter of law from the

---

[9] *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d 261 (2021).

[10] *Becher v. Becher, ante* p. 1, 970 N.W.2d 472 (2022).

four corners of the decree itself.[11] To the extent that we have not said so directly, we iterate that the same principle applies to a decree which includes both a settlement agreement and a parenting plan—it is construed as an integrated judgment. The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation.[12] Effect must be given to every part thereof, including such effect and consequences that follow the necessary legal implication of its terms, although not expressed.[13] Because the parties attached a parenting plan to their marital settlement agreement which the court incorporated into the decree, we consider the documents together in determining the meaning of the decree.

[7] The contents that must be included in a parenting plan are set forth in statute.[14] Pertinent to this appeal, a parenting plan shall include a determination regarding legal custody of the child.[15] In other words, a determination of legal custody is a mandatory and indispensable part of a parenting plan pursuant to § 43-2929.[16] Legal custody focuses entirely on decisionmaking authority.[17]

The Parenting Act defines the terms "legal custody" and "joint legal custody," and those terms have the same definitions for purposes of domestic relations actions.[18] "Legal custody

---

[11] *Johnson v. Johnson, supra* note 9.

[12] *Id.*

[13] *Bayne v. Bayne*, 302 Neb. 858, 925 N.W.2d 687 (2019).

[14] See § 43-2929.

[15] § 43-2929(1)(b)(i).

[16] See *id.*

[17] See *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

[18] See Neb. Rev. Stat. §§ 42-347 (Reissue 2016) and 43-2922.

means the authority and responsibility for making fundamental decisions regarding the child's welfare, including choices regarding education and health."[19] On the other hand, "[j]oint legal custody means mutual authority and responsibility of the parents for making mutual fundamental decisions regarding the child's welfare, including choices regarding education and health."[20]

[8] The difference between the two concepts is obvious. Under the Parenting Act, joint legal custody involves "*mutual* authority and responsibility *of the parents*"[21] while legal custody does not.[22]

[9,10] The definition of "joint legal custody" contained in the Parenting Act provides a baseline for what the term means within the context of child custody. In contract cases, we have said, "'Trade terms, legal terms of art, numbers, common words of accepted usage and terms of a similar nature should be interpreted in accord with their specialized or accepted usage unless such an interpretation would produce irrational results or the contract documents are internally inconsistent.'"[23] In probate matters, we have applied a similar rule: Generally, a term of art used in reference to a devise or other testamentary disposition or provision has a technical but clear meaning.[24] We now hold that the definitions in the Parenting Act of "legal custody" and "joint legal custody" are terms of art having clear and unambiguous meaning. In the absence of an explicit contrary definition in a parenting plan, the term "joint legal custody" must be construed according to its statutory definition in the Parenting Act.

---

[19] § 43-2922(13). See, also, § 42-347(6).

[20] § 43-2922(11). See, also, § 42-347(4).

[21] § 43-2922(11) (emphasis supplied).

[22] § 43-2922(11) and (13).

[23] *Kalkowski v. Nebraska Nat. Trails Museum Found.*, 290 Neb. 798, 804-05, 862 N.W.2d 294, 301 (2015).

[24] *In re Estate of Hannan*, 246 Neb. 828, 523 N.W.2d 672 (1994).

With that understanding, we turn to the integrated decree here. The decree awarded the parties "joint legal and physical custody" of their child. The marital settlement agreement stated that the parties agreed to "share legal and joint physical custody . . . as outlined in the Parenting Plan." The parenting plan stated that the parties agreed to "Joint Legal Custody (decision-making)." None of those documents specifically defined "joint legal custody."

Reading the document as a whole, mutuality runs throughout. Time-sharing provisions provide that "[t]he parents agree that they will work together to adjust [the child's] schedule if their time with [the child] interferes with the work schedule" and that "[n]either parent may make plans for the child during the other parent's parenting time without talking with that parent in advance and obtaining that parent's consent." The paragraph on summer break requires the parties to "work together to develop a schedule for the summer." Temporary changes can be made to the plan "as long as they both agree to it"; permanent changes can be initiated "by mutual, written agreement of the parents." Finally, the remediation provision states that if the parties are unable to resolve a dispute concerning the child or the parenting plan, "they will first attempt to mediate a solution through mediation prior to filing legal action."

Narrowing our focus to particular provisions of the parenting plan, we start with the paragraph entitled "Decision Making." That paragraph stated that the parties "will discuss matters concerning the child, such as health and medical, school related problems and decisions, and any behavioral or disciplinary issues that could impact both households." But that paragraph does not remove the mutuality element and does not confer final decisionmaking authority on either party. In other words, there is nothing in that paragraph inconsistent with the statutory definition of "joint legal custody." Reading the decree in that fashion effectively reads the words "joint legal custody" out of the parenting plan—a reading which

would violate the principle that effect should be given to all words and phrases in the judgment.

[11,12] Under the decree at issue, changes in the child's residence or school enrollment are matters governed by the provision for joint legal custody. In a child custody case, the decision of where a child will reside is a fundamental decision affecting the child's welfare. If the decision could be made unilaterally, that would need to be clearly articulated in the plan. It was not. Likewise, the decision of where a child will attend school is a fundamental decision.[25] Nothing in the decree or incorporated plan provides that this decision can be made by one parent. As a fundamental decision and in accordance with the meaning of joint legal custody, it required mutual agreement.

The district court erred in determining what the parenting plan required. The court's reasoning that the parties need only discuss matters because the arrangement was "silent on mutual authority" is contrary to the meaning of "joint legal custody." And as we noted above, neither the parenting plan nor the decree conferred final decisionmaking authority on either party. We conclude the district court erred in interpreting the plan to require discussion only.

[13,14] Nor are we persuaded that there is anything unfair or unreasonable in holding the parties to the terms of art they chose in their parenting plan. A maxim sanctioned by centuries of experience is that ignorance of the law is no excuse.[26] Everyone is presumed to know the law.[27] Both maxims apply to Nessa, particularly in light of paragraph S of the parenting plan, where the parties "represent[ed]" they "each [had] had ample opportunity to discuss this parenting plan with [their] attorneys" and "certifie[d] they underst[ood] the terms contained" therein.

---

[25] See *Vyhlidal v. Vyhlidal, supra* note 1.

[26] See *State ex rel. Nebraska State Bar Assn. v. Holscher*, 193 Neb. 729, 230 N.W.2d 75 (1975).

[27] *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991).

## 2. Contempt

Having established the meaning of the decree as a matter of law, we move to the district court's determinations pertaining to the contempt proceeding before it. Under our three-part standard of review, we review the district court's resolution of issues of law de novo, its factual findings for clear error, and its determinations of whether a party is in contempt and of the sanction to be imposed for an abuse of discretion.

### (a) Violation of Parenting Plan

Having settled that joint legal custody required mutual decisionmaking, whether Nessa violated the parenting plan is easily answered. Nessa complied in part by discussing with Eric her plan to move the child's residence to a distant town and enroll him in a different school district and by attempting to mediate a solution. But Nessa knew that Eric opposed those actions and that there was not mutual agreement, and she moved the child to the other town and enrolled him in the other school anyway. The "Remediation" provision of the plan hints at the next step when parties cannot agree: "filing legal action." The district court's erroneous interpretation of the parenting plan's requirements led it to find that Eric failed to establish a violation of the parenting plan by Nessa. In doing so, the court abused its discretion.

### (b) Willfulness of Violation

[15,16] To be in contempt, Nessa's violation of the parenting plan had to be willful. Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order.[28] Outside of statutory procedures imposing a different standard or an evidentiary presumption, the complainant must prove all elements of contempt by clear and convincing evidence.[29]

---

[28] *Becher v. Becher, supra* note 10.

[29] *Id.*

Eric proved willfulness by clear and convincing evidence. The evidence established that he informed Nessa of his objection to moving the child's residence and school. While Nessa claims that she believed the parenting plan required discussion only, our first opinion demonstrated that any such subjective belief was erroneous. While Nessa did not move the child until after the district court denied Eric's motion for an order to show cause and motion for writ of assistance, she did not seek modification or other relief through the court.

[17] We conclude the district court abused its discretion when it found that Nessa was not in contempt. A district court by definition abuses its discretion when it makes an error of law.[30]

(c) Remedial Relief and Coercive Sanctions

[18-20] Because Nessa willfully violated the decree, coercive and remedial sanctions are appropriate. Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party.[31] A civil sanction is coercive and remedial; the contemnors carry the keys of their jail cells in their own pockets, because the sentence is conditioned upon continued noncompliance and is subject to mitigation through compliance.[32] Moreover, costs, including reasonable attorney fees, can be awarded in a contempt proceeding when there has been a finding of contempt.[33]

Here, Eric is entitled to obtain Nessa's compliance with the decree. This requires the immediate return of the child to Burwell and that school district. Eric is also entitled to his reasonable attorney fees. Nothing in this opinion should be

[30] *Stone Land & Livestock Co. v. HBE*, 309 Neb. 970, 962 N.W.2d 903 (2021).

[31] *Becher v. Becher, supra* note 10.

[32] *Id.*

[33] *Id*.

construed to preclude the district court on remand from considering modification of the decree, whether upon the complaint of either party[34] or as part of a contempt proceeding.[35]

## VI. CONCLUSION

We reverse the order of the district court, which declined to find that Nessa violated the decree or that she did so willfully. We remand the cause with directions to find Nessa in willful contempt, to order the child's immediate return to Burwell residency and school enrollment, to award Eric reasonable attorney fees, to craft such coercive sanctions as may be appropriate to achieve Nessa's compliance with the decree, and for further proceedings in conformity with this opinion.

Reversed and remanded with directions.

---

[34] See Neb. Rev. Stat. § 42-364(6) (Cum. Supp. 2020).

[35] See Neb. Rev. Stat. § 42-364.15 (Reissue 2016).