Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:05 AM CST

Heather K. Yochum, now known as
Heather K. Underwood, appellant,
v. Chad C. Yochum, appellee.

___ N.W.2d ___

Filed September 30, 2022.    No. S-21-563.

1. **Divorce: Judgments: Appeal and Error.** The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.

2. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.

3. **Attorney Fees: Contempt: Appeal and Error.** A trial court's decision awarding or denying attorney fees in a contempt proceeding will be upheld on appeal absent an abuse of discretion.

4. **Judgments: Words and Phrases.** A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.

5. **Damages: Evidence: Proof.** A plaintiff's evidence of damages may not be speculative or conjectural and must provide a reasonably certain basis for calculating damages.

6. ____: ____: ____. The question whether the evidence of damages is "reasonably certain" is a question of law, and not as a matter to be decided by the trier of fact.

7. **Evidence: Records: Pleadings: Appeal and Error.** An appellate record typically contains the bill of exceptions, used to present factual evidence

to an appellate court, and the transcript, used to present pleadings and orders of the case to the appellate court.

8. **Evidence: Records: Appeal and Error.** A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. Before an appellate court can consider evidence bearing upon an issue of fact, evidence must have been offered at the trial court and embodied in the bill of exceptions.

10. **Divorce: Contempt.** When a party willfully violates a decree, coercive and remedial sanctions are appropriate.

11. **Contempt.** Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party.

12. **Contempt: Costs: Attorney Fees.** Costs, including reasonable attorney fees, can be awarded in a contempt proceeding when there has been a finding of contempt.

13. **Attorney Fees.** The decision to award attorney fees is a matter of discretion.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed in part, vacated in part, and in part reversed and remanded for further proceedings.

Ryan Mick Swaroff, of Swaroff Law, L.L.C., for appellant.

Jeanelle S. Kleveland, of Kleveland Law Office, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.
### NATURE OF CASE
The district court for Lancaster County found that Heather K. Yochum, now known as Heather K. Underwood, was in contempt of court orders contained in the divorce decree from Chad C. Yochum. Specifically, it found that for the tax years 2014 and 2019, she willfully violated the dependency tax exemption provisions of her marital dissolution decree and the order in modification. Heather appeals the findings of

contempt, the amount of damages awarded to Chad, and attorney fees. We reverse the district court's order finding Heather in contempt for taking tax exemptions for the 2014 tax year, but affirm with respect to her filing for 2019. We vacate the award of $3,975 awarded to Chad for tax year 2014, because he was not harmed in 2014. We also vacate $600 in damages awarded to Chad for the 2019 tax year for lack of proof. Finally, we reverse the award of attorney fees to Chad and remand the cause for further proceedings with respect to the amount of Chad's attorney fees.

## STATEMENT OF FACTS

On March 7, 2011, the district court entered a decree dissolving the marriage of Heather, the appellant, and Chad, the appellee. The parties have four children together. In 2016, the decree of dissolution was modified as to child support obligations, custody, and specific parenting time. In 2020, Chad filed an application for order to show cause, alleging that Heather was in contempt of the district court's prior orders because she claimed dependency tax exemptions on her federal taxes in 2014 and 2019. The district court for Lancaster County held hearings on three dates in the fall of 2020 and a fourth date in June 2021. In October 2020, Heather filed a motion for Chad to show cause why he should not be found in contempt of court for allegedly failing to pay his portion of childcare expenses during 2019. The record may be summarized as follows:

*2011 Decree.*

The 2011 decree awarded Heather physical custody of the parties' minor children, and Chad received reasonable rights of parenting time set forth in the parenting plan. It provided that Chad pay child support to Heather and subjected him to income withholding. The attached property settlement also provided that "in the event [Chad] fails to pay any support as such failure is certified each month by the Clerk of the

Lancaster County District Court in which court-ordered support is delinquent in an amount equal to the support due and payable for a one-month period of time," he would be required to show cause why such payment was not made or face a warrant for his arrest. Critical to the arguments made in this litigation, the decree provided:

> 7. DEPENDENCY EXEMPTIONS: Commencing the year 2011, [Chad] shall have the right to claim [two of the minor children] as dependents on his State and Federal Taxes. At such time as there are three (3) minor children, [Heather] shall claim two (2) of the children in even-numbered years, and [Chad] shall claim one (1) child in even-numbered years. In odd-numbered years, [Heather] shall claim one (1) minor child and [Chad] shall claim two (2) children. At such time as there are two (2) minor children, each party shall claim one (1) child. When there is only one minor child, the parties shall alternate the dependency exemption with [Heather] claiming the minor child in all even-numbered years and [Chad] claiming the minor child[] all odd-numbered years. [*Chad*] *shall only be entitled to claim any of the minor children for dependency exemption purposes in any year so long as he is current on his child support, child care, and medical care obligations at the end of the appropriate tax year.* [Heather] agrees to not make any conflicting claim for said exemptions and shall upon request execute an IRS form 8332 releasing all right to claim said exemption.
>
> 8. CHILD CARE: The parties shall each pay 50% [of] the work related child care costs incurred on behalf of the minor children, and [Chad] shall reimburse [Heather], as necessary, for child care expenses within fifteen (15) days of receipt of the statement for the same. [Heather] shall be allowed to claim the child care expense as a deduction on her taxes each year.

(Emphasis supplied.)

*2016 Order in Modification.*

On July 27, 2016, the district court entered an order in modification which, inter alia, modified the amount of Chad's child support obligations. The order of modification did not provide for any changes to the parties' dependency tax exemptions and childcare obligations and stated that "[a]ny provisions not herein modified from prior orders remain in full force and effect."

*2014 Dependent Tax Exemption.*

Chad offered as an exhibit a notice of penalty he received from the Internal Revenue Service after both he and Heather had claimed the same two minor children for the tax year 2014.

Chad testified, and the record reflects, that in 2014, he had an automatic wage withholding for his child support. However, a payment history report from the Department of Health and Human Services (DHHS) showed that on December 31, 2014, Chad owed $557.79. Chad and Heather testified that Chad did not meet his child support obligations for a period of several weeks in 2013 because he lost his job, and the amount owed shown on the DHHS report at the end of 2014 reflected what remained of his prior arrearage. The DHHS report showed that Chad's consistent payments throughout 2014 applied to satisfy the present month's child support obligation, and DHHS applied any remaining money from Chad's payments to the balance in arrears carried forward from past months.

Heather had testified at depositions taken in July 2016 that she believed Chad could not take the 2014 dependency exemption, because he was not "current" on child support. She testified that she had talked to child support enforcement and obtained a copy of the payment history report for that year. Because Chad did not have a zero balance at the end of 2014, she filed her taxes believing he could not take the exemption.

*2019 Dependent Tax Exemption.*

With respect to the 2019 tax year, the payment history report from DHHS showed that Chad had a credit on December 31, 2019, of $114.85 for child support. Chad testified about a timing issue, specifically that the account showed a credit, because there are periods of time where there are credits and periods of time where money is owed, depending on how many pay periods are in a month. He testified that in January or early February 2020, he sent a text message to Heather reminding her that he could claim the two minor children on the taxes for the 2019 tax year. He received no response. He testified that he sent a text message to Heather in August 2020 asking why she used the child tax deduction and that she stated she forgot.

Chad testified at the October 2020 trial that he lost a $2,000 tax credit because he could not claim one child in 2019 and that he subsequently lost out on a coronavirus relief payment of $500. He explained that the 2019 coronavirus relief package would have given him an additional payment for each child under the age of 17 and requested that Heather repay the relief money as well as the tax credit.

*Daycare.*

Chad testified on cross-examination that the children attended daycare from 2010 to 2018, and he conceded that he had never paid childcare expenses to Heather or to the childcare facilities. He claimed he had never received any statement or receipt from Heather regarding expenses for daycare or childcare. He acknowledged two text message conversations and agreed that Heather had previously told Chad that he owed half of childcare expenses. Chad testified that he thought daycare expenses were free for Heather because of her work for the childcare providers. He testified that he believed that daycare continued to be free as a benefit of Heather's employment and that that was their understanding at the time of the divorce. He testified that he did not receive an invoice to pay daycare expenses until late 2020.

Heather testified that she had provided Chad three daycare receipts over the years and that she alone paid for daycare from 2011 through 2018. Heather testified that she stopped providing Chad receipts, because he would get angry and call her names. Heather testified that she received "Title 20" and $5,000 per year of daycare costs from her employer. Heather did not provide any exhibits showing receipts she sent to Chad prior to October 2020, which date was proximate to Heather's filing for contempt for Chad's alleged failure to pay childcare. Heather offered exhibits 21 and 22, which included attachments to an October 5, 2020, text message sent by Heather to Chad. The attachments were represented as reflecting daycare expenses. After her benefits, Heather claimed to have paid childcare expenses of $946 in 2016, $1,135.95 in 2017, and $757.28 in 2018. Exhibits 21 and 22 were excluded from evidence as hearsay.

*District Court Order.*

At the conclusion of the evidence, the district court found Heather in contempt for taking incorrect dependency exemptions in 2014 and 2019. The court noted that Chad fell behind in 2013 when he lost his job. In June 2021, the court issued an order finding Heather in willful and contumacious contempt of the decree, sentencing her to 30 days in jail, with the ability to avoid jail time by making $200 monthly payments to Chad for 24 months. The court ordered Heather to pay a total judgment of $10,075, which was composed of $3,975 in additional taxes Chad paid in 2014, a $2,000 tax refund he lost for 2019, $500 and $600 2020 coronavirus relief payments, and $3,000 in attorney fees. Heather appeals.

## ASSIGNMENTS OF ERROR

Heather claims, summarized and restated, that the district court erred when it found that Heather was in willful and contumacious contempt of the decree and order in modification. She also claims that the district court abused its discretion with respect to damages and attorney fees awarded to Chad.

## STANDARDS OF REVIEW

[1] The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below. *Vyhlidal v. Vyhlidal*, 311 Neb. 495, 973 N.W.2d 171 (2022).

[2] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Id*.

[3,4] A trial court's decision awarding or denying attorney fees in a contempt proceeding will be upheld on appeal absent an abuse of discretion. See *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

## ANALYSIS

Heather claims that the district court erred when it found that she was willfully in contempt of court because she had claimed dependency exemptions on her federal income taxes for the years 2014 and 2019. She also challenges the amounts of damages and attorney fees awarded to Chad. Heather contends that the language of the decree, unchanged by the subsequent order in modification, permitted Chad to claim the minor children for dependency exemption purposes only "so long as he is current on his child support, child care, and medical care obligations at the end of the appropriate tax year" and that he was not "current." Brief for appellant at 14 (emphasis omitted). Below, we examine whether Chad was current on these obligations at the end of the 2014 and 2019

tax years and conclude that Chad was not current in 2014 but was current in 2019 and thereby entitled to the dependency tax exemption for 2019, but not 2014. We also adjust the damages awarded to Chad and remand the issue of attorney fees to the district court.

*2014 Tax Year.*

With respect to 2014, Heather argues that Chad was in arrears on child support payments and was not "current" at the end of the year—and thus not entitled to claim the dependent tax exemption—and was not harmed with respect to his liability for the 2014 tax year. We agree with Heather's argument.

Chad does not contest that he owed a balance on December 31, 2014, but argues that because he had not missed monthly payments in 2014, he was "current." We conclude that "current" in the context of this decree means fully paid and up to date. Chad was not "current" at the end of the 2014 tax year.

The testimony was consistent that Chad had an automatic wage withholding, except for 6 weeks in 2013 when he lost his job. Exhibits at trial, including child support payment history reports from DHHS, confirmed this testimony. When Chad missed several child support payments in 2013, his account fell into arrears. As Chad resumed his regular payments, each payment applied first to the pending month's child support obligation. Money remaining after the pending month's support obligation served to reduce the amount in arrears, and the arrearage decreased until Chad became fully caught up in 2016. On December 31, 2014, Chad owed a balance of $557.79, largely composed of the arrearage incurred in 2013 for failure to pay child support.

Chad argues that he was "current" under the decree, because a balance of $557.79 was not enough to trigger enforcement proceedings. As authority, he cites Neb. Rev. Stat. § 43-1718.01(4) (Reissue 2016), which provides:

> No obligor whose child support payments are automatically withheld from his or her paycheck shall be regarded

or reported as being delinquent or in arrears if (a) any delinquency or arrearage is solely caused by a disparity between the schedule of the obligor's regular pay dates and the scheduled date the child support is due, (b) the total amount of child support to be withheld from the paychecks of the obligor and the amount ordered by the support order are the same on an annual basis, and (c) the automatic deductions for child support are continuous and occurring.

Section 43-1718.01 concerns child support enforcement. This case is not an enforcement action. Instead, we are called upon to follow the language of the decree. See *Vyhlidal v. Vyhlidal*, 311 Neb. 495, 973 N.W.2d 171 (2022). Even if § 43-1718.01 could provide context for the meaning of certain words used in the decree, it is factually inapplicable here because Chad's arrearage is not a timing issue "solely caused by a disparity between the schedule of the obligor's regular pay dates and the scheduled date the child support is due." Chad's arrearage was not caused solely by bureaucratic lag or timing discrepancies; the reason he was not current was because of events in 2013. Under the plain language of the decree, because Chad was not current on his child support obligations at the end of the 2014 tax year, he was not entitled to claim the dependency exemption on his federal taxes.

The record shows that Heather was informed by DHHS reports that Chad was in arrears on December 31, 2014, and thus, Chad was not "current." Appropriately, she filed her taxes and claimed the dependency exemption for the 2014 tax year. The district court erred when it held Heather in willful and contumacious contempt of court for having taken child tax exemptions in her tax filings for 2014. We reverse this portion of the order of the district court. Further, based on our ruling, because Chad was not harmed with respect to his tax liability for the 2014 tax year, we vacate the damage award of $3,975 to which Chad was not entitled.

*2019 Tax Year.*

With respect to 2019, Heather claims that the district court erred when it found her in contempt for taking the dependent tax credit for 2019. Specifically, Heather claims that Chad was not current on paying his portion of childcare expenses and thus not entitled to the exemptions. We find no merit to this claim of error.

Heather testified that she paid work-related childcare expenses for the children over the years, and Chad admitted that he had never paid Heather for daycare, because he believed it was a benefit of Heather's employment. However, turning to the decree which controls our analysis, the question for the trial court and for us on appeal is whether Chad failed to "reimburse [Heather], as necessary for child care expenses within fifteen (15) days of receipt of the statement for the same."

The record before us has no evidence that Heather timely submitted childcare expense statements to Chad prior to December 31, 2019, as anticipated by the decree or that such statements remained unpaid at the end of December 2019. Heather's requests for reimbursement for childcare expenses submitted to Chad after December 31, 2019, are not encompassed by the assignments of error in this appeal. The record of admitted evidence does not prove a failure by Chad to timely pay childcare, and we note merely incidentally that DHHS payment history reports demonstrate that on December 31, 2019, Chad had a child support credit of $114.85.

Given the admitted evidence, Chad established that Heather took the dependency exemption for 2019, even though Chad was current on his obligations under the decree and order in modification. The district court did not err when it found Heather in contempt of the decree, because she took the dependency exemptions for the 2019 tax year. We affirm this portion of the district court's order.

*Damages for 2019 Tax Year.*

Because we have concluded that Chad was entitled to the dependency exemption for 2019, we must consider the damages

he may have suffered as a consequence of being deprived of the exemption in 2019. Specifically, although there was evidence that Chad did not receive a $500 coronavirus relief payment, Heather claims that Chad did not adduce evidence of the second 2020 relief payment, and the district court erred when it included an extra $600 in damages for Chad that was unsupported by the evidence at trial. We agree with Heather that the record lacks evidence related to a hypothetical $600 payment and vacate the award of $600.

[5,6] We have often stated that a plaintiff's evidence of damages may not be speculative or conjectural and must provide a reasonably certain basis for calculating damages. *Pribil v. Koinzan*, 266 Neb. 222, 665 N.W.2d 567 (2003). We have consistently framed the question whether the evidence of damages is "reasonably certain" as a question of law, and not as a matter to be decided by the trier of fact. *Id*.

[7-9] Here, to evaluate whether the evidence of Chad's claimed damages is reasonably certain, we must examine the evidence in the record. An appellate record typically contains the bill of exceptions, used to present factual evidence to an appellate court, and the transcript, used to present pleadings and orders of the case to the appellate court. *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017). A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *Id*. Before this court can consider evidence bearing upon an issue of fact, evidence must have been offered at the trial court and embodied in the bill of exceptions. *Smick v. Langvardt*, 216 Neb. 778, 345 N.W.2d 830 (1984). Specifically, we must consider whether the bill of exceptions contains any evidence which contributed to the lower court's decision either through exhibits, through judicial notice, or as a result of a stipulation or admission by the parties. See *In re Estate of Radford, supra*.

The parties do not dispute that Chad lost a $2,000 refund he would have received if he had claimed a dependent on his

2019 taxes. Chad also testified at the October 5, 2020, hearing that he lost a $500 payment from the federal coronavirus relief package. However, although Chad did not testify to a second relief payment, the district court nevertheless awarded Chad $1,100 to reflect $500 and $600 coronavirus relief payments. Although there was some argument by counsel for Chad relative to the $600 stimulus opportunity, the record does not contain evidence, judicial notice, or stipulation or admission of the parties that Chad lost a $600 relief payment which may have been available later in 2020. Accordingly, we reverse the award of the additional $600 in damages to Chad because it exceeded the evidence in the record.

*Attorney Fees.*

Finally, Heather assigns error to the district court's award of $3,000 for Chad's attorney fees, noting that Chad had submitted an affidavit that indicated his attorney fees were $2,031.44.

[10-12] We have explained that when a party willfully violates a decree, coercive and remedial sanctions are appropriate. See *Vyhlidal v. Vyhlidal*, 311 Neb. 495, 973 N.W.2d 171 (2022). Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Id*. Costs, including reasonable attorney fees, can be awarded in a contempt proceeding when there has been a finding of contempt. *Id*.

[13] The decision to award attorney fees is a matter of discretion. See *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022). Because we reverse the portion of the order which found Heather in contempt related to the 2014 dependency exemption and we vacate the damage awards of $3,975 and $600 to Chad, we believe the district court should exercise its discretion anew in light of these outcomes. Accordingly, we reverse the award of attorney fees and remand the cause for reconsideration and recalculation of attorney fees in light of this opinion.

## CONCLUSION

For the reasons above, we conclude that Heather was not in contempt of the decree when she took a dependency tax exemption for 2014, and we reverse the order of the district court which found Heather in contempt regarding the 2014 tax exemption and vacate the award to Chad of $3,975 occasioned by this incorrect ruling. We affirm the order finding Heather in contempt with respect to the 2019 tax year. We vacate the award of $600 in damages to Chad for a lost coronavirus relief payment for the 2019 tax year which was unsupported by the record. We reverse the award of attorney fees to Chad and remand the cause with directions to award Chad reasonable attorney fees, and for further proceedings in conformity with this opinion.

Affirmed in part, vacated in part, and
in part reversed and remanded
for further proceedings.