Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/20/2023 09:05 AM CST

Kari L. Mackiewicz, now known as
Kari L. Veleba, appellant, v.
James A. Mackiewicz, appellee.
___ N.W.2d ___

Filed January 20, 2023.    No. S-22-128.

1.  **Modification of Decree: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court.

2.  **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3.  **Divorce: Judgments: Appeal and Error.** The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.

4.  **Divorce: Property Settlement Agreements: Final Orders.** A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including a settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.

5.  **Divorce: Judgments: Intent.** The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation.

6.  ____: ____: ____. Effect must be given to every part of a decree, including such effect and consequences that follow the necessary legal implication of its terms, although not expressed.

7.  **Divorce: Modification of Decree: Alimony.** A district court entering a decree dissolving a marriage has the power to award alimony and, where it is awarded, the power to modify or revoke it.

8. **Modification of Decree: Alimony: Good Cause.** Where an award of alimony may be modified or revoked, that modification is for good cause shown.

9. **Modification of Decree: Alimony: Good Cause: Words and Phrases.** Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case. Good cause is demonstrated by a material change in circumstances, but any changes in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not justify a change or modification of an alimony order.

10. **Modification of Decree: Alimony: Proof.** The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award.

11. **Modification of Decree.** To determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree, a trial court should compare the financial circumstances of the parties at the time of the divorce decree, or last modification of the decree, with their circumstances at the time the modification at issue was sought.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

John A. Kinney, Jill M. Mason, and Samantha M. Robb, of Kinney Mason, P.C., L.L.O., for appellant.

Robert W. Futhey and Alexander S. Arkfeld, of Fraser Stryker, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

The district court found a material change in circumstances had occurred sufficient to warrant modification of James A. Mackiewicz' alimony obligation. Kari L. Mackiewicz, now known as Kari L. Veleba, appeals. We affirm.

## BACKGROUND

James and Kari were married on December 16, 1995, and divorced on July 14, 2017, pursuant to a consent decree of dissolution. As relevant to the issues on appeal, that decree provided an award of alimony paid to Kari by James. Paragraph 8 of the decree stated:

a) **ALIMONY**: The Defendant shall pay alimony for the support and maintenance of the Plaintiff to be due and payable on the first day of August, 2017, and said amount shall continue to be due on the first of each month thereafter and the payments shall be as follows:

i. Defendant shall pay alimony in the amount of $4,000.00 per month for the first twenty-four (24) months after entry of this Decree;

ii. Defendant shall then pay alimony in the amount of $3,500.00 per month for the next twenty-four (24) months;

iii. Defendant shall then pay alimony in the amount of $3,000.00 per month for the next forty-eight (48) months;

iv. Defendant shall then pay alimony in the amount of $2,000.00 per month for the next thirty-six (36) months; and

v. Defendant shall then pay alimony in the amount of $1,000.00 per month for the final twenty-four (24) months.

The death of the Defendant or remarriage of the Plaintiff shall not terminate the alimony order and it shall be in place until such time as it is fully satisfied. The Defendant shall make alimony payments through the Clerk of the District Court of Douglas County, Nebraska for disbursement to the Plaintiff.

At the time of the parties' divorce, James was employed in the financial services field in Omaha, Nebraska, at a salary of approximately $162,000 per year. Kari was a graduate student, studying for her doctorate in education. Subsequent to the divorce, Kari earned her doctorate and obtained

employment in administration at a local school district at a salary of $73,345 per year. In 2019, James left his employment in Omaha—where by that time he earned approximately $185,000 per year with additional bonus potential—for a new employment opportunity in Austin, Texas. At this new job, James earned approximately $200,000 per year, with additional bonus potential.

About 6 months into his new employment, James' employment was terminated for "unsatisfactory work performance." James returned to Omaha and attempted to obtain new employment. He testified that he looked for a job that matched his education and talents and found two. He unsuccessfully applied for both. At this point, James began looking at different opportunities and began his own consulting business. As of the time of trial, James had not made any income at this new endeavor.

On August 11, 2020, James filed a motion for modification of his alimony obligation, alleging a material change in circumstances. He alleged his loss of employment and the subsequent starting of his consulting firm, as well as Kari's increased income, as changes in circumstance. Shortly thereafter, Kari filed a motion to hold James in contempt for failing to keep current on his alimony obligation, alleging that he was in arrears in the amount of $10,522.73 and that he had also failed to provide proof that he continued to carry the life insurance policy required of him under the decree.

Multiple orders were entered by the district court in advance of trial. Pertinent to this appeal was the district court's denial of Kari's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim. Kari alleged that the alimony award was nonmodifiable and that thus, the district court lacked subject matter jurisdiction to entertain James' motion to modify, or, alternatively, that because the alimony award was nonmodifiable, James had failed to state a claim upon which relief could be granted.

The district court denied the motion, concluding that it had subject matter jurisdiction over the motion because "the Decree does not expressly preclude modification of the alimony award." The district court relied upon *Grothen v. Grothen*[1] to support its conclusion, noting the fact that the award was agreed to by the parties did not affect the court's analysis. The district court also used the fact that it found the award not to specifically preclude modification to deny Kari's motion to dismiss for failure to state a claim.

Following a trial, the district court found a material change in circumstances as alleged by James, denied Kari's motion to find James in contempt, and entered a new alimony schedule that required James to pay $700 a month in alimony beginning September 1, 2020, through the end of the year 2025. Kari has appealed.

## ASSIGNMENTS OF ERROR

Kari assigns, renumbered, that the district court erred in modifying James' alimony obligation because (1) the parties had entered into a consent decree dissolving their marriage, (2) the alimony award as written was nonmodifiable, and (3) James' income was reduced following his voluntarily leaving his well-paid job in Omaha.

## STANDARD OF REVIEW

[1,2] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court.[2] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[3]

---

[1] *Grothen v. Grothen*, 308 Neb. 28, 952 N.W.2d 650 (2020).

[2] *Id.*

[3] *Id*.

[3] The meaning of a divorce decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below.[4]

## ANALYSIS

In this case, the district court modified Kari's award of alimony. This appeal raises issues of whether the parties' alimony award was modifiable under the terms of the decree and, if so, whether the district court's modification was otherwise an abuse of discretion. We find that the alimony award was modifiable and that the district court did not abuse its discretion in its modification.

[4] In reaching these conclusions, we begin with a review of the statutes and our case law regarding divorce decrees and alimony awards. A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including a settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.[5]

[5,6] The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation.[6] Effect must be given to every part thereof, including such effect and consequences that follow the necessary legal implication of its terms, although not expressed.[7]

[7] A district court entering a decree dissolving a marriage has the power to award alimony and, where it is awarded, the power to modify or revoke it. Neb. Rev. Stat. § 42-365 (Reissue 2016) provides:

---

[4] *Vyhlidal v. Vyhlidal*, 311 Neb. 495, 973 N.W.2d 171 (2022).

[5] *Id*.

[6] *Id.*

[7] *Id*.

When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. . . . A proceeding to modify or revoke an order for alimony for good cause shall be commenced by filing a complaint to modify. . . . Amounts accrued prior to the date of filing of the complaint to modify may not be modified or revoked. A decree may not be modified to award alimony if alimony was not allowed in the original decree dissolving a marriage. A decree may not be modified to award additional alimony if the entire amount of alimony allowed in the original decree had accrued before the date of filing of the complaint to modify. Except as otherwise agreed by the parties in writing or by order of the court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient.

While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately. The purpose of a property division is to distribute the marital assets equitably between the parties. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

Pursuant to Neb. Rev. Stat § 42-366 (Reissue 2016), the parties may also agree to alimony as follows:

(1) To promote the amicable settlement of disputes between the parties to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a written property settlement agreement containing provisions for the maintenance of either of them,[8] the disposition of any property owned by either of them, and the support and custody of minor children.

. . . .

(7) Except for terms concerning the custody or support of minor children, the decree may expressly preclude or limit modification of terms set forth in the decree.

*Interpretation of Decree.*

These propositions lead us to the first issue presented by this appeal—whether the parties' decree included language indicating that the alimony award was nonmodifiable. Kari contends that the district court erred in modifying the decree because she and James agreed upon that decree, and it was not imposed upon them by the court, and also because the language of the decree itself states that it is not modifiable. Both contentions were rejected by the district court. We now address each in turn and find both to be without merit.

In support of her assertion that the decree is entitled to more force than decrees entered by a court, Kari directs us to *Desjardins v. Desjardins.*[9] We agree with Kari that the *Desjardins* court states the proposition she relies upon. We nevertheless find the case inapplicable. In *Desjardins* and in the cases cited therein, the question of whether alimony was properly modified was analyzed to determine whether there was "a material and substantial change of circumstances not contemplated by the parties at the time of the decree"[10]—the same standard normally utilized when examining petitions

---

[8] See *Grothen v. Grothen, supra* note 1.

[9] *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992).

[10] *Id.* at 882, 479 N.W.2d at 454.

seeking modification—and not the higher "gross inequity" standard which applies where a decree is nonmodifiable.[11] Moreover, we explicitly noted in *Euler v. Euler*[12] that "dissolution decrees may be modified with reference to alimony by the plain language of the statutes even if they are based on property settlement agreements, so long as the parties or the court have not provided otherwise in writing."

We turn next to the issue of whether the alimony award was nonmodifiable by its terms. Both parties point to language in the decree supporting their respective positions. James directs us to the portion of paragraph 8 of the decree that provides:

> t) **WAIVER OF BREACH**: No waiver of any breach by either party of the terms of this Decree shall be deemed a waiver of any subsequent breach. *No modifications of this Decree shall be binding upon either of the parties unless reduced to writing and subscribed to by both parties unless otherwise ordered by the Court.*

(Emphasis supplied.) Kari primarily relies on the portion of the language of the alimony award that states that the award "shall be in place until such time as it is fully satisfied." She further argues that the modification language relied upon by James is not specifically applicable to the alimony award set forth in the decree.

We conclude that the alimony award is modifiable. It is apparent from paragraph 8(t) of the decree that the parties envisioned a possibility of the decree's being modified.

And we find the language Kari relies upon—that the alimony award as set forth in paragraph 8(a) of the decree was to be in place until such time as it was fully satisfied—not to set an absolute bar to modification. Rather, we read it in conjunction with the rest of that same sentence, which notes that remarriage or death has no effect on the payment of alimony. This language contemplates termination of the alimony

---

[11] See *Grothen v. Grothen, supra* note 1, 308 Neb. at 34, 952 N.W.2d at 657.

[12] *Euler v. Euler*, 207 Neb. 4, 9-10, 295 N.W.2d 397, 400 (1980).

award, but termination is not the same as modification. Should the parties have intended to absolutely bar modification of the decree or the alimony award itself, there are more direct ways to effect such a result.

We find no error in the district court's determination that the decree, and in turn the alimony award, was modifiable. Kari's assignments of error to the contrary are without merit.

*Change in Circumstances.*

In her final assignment of error, Kari assigns that the district court erred in finding a material change in circumstances sufficient to modify the alimony award.

[8-10] We begin with familiar propositions. Where an award of alimony may be modified or revoked, that modification is for good cause shown.[13] Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case.[14] Good cause is demonstrated by a material change in circumstances, but any changes in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not justify a change or modification of an alimony order.[15] The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award.[16]

[11] To determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree, a trial court should compare the financial circumstances of the parties at the time of the divorce decree, or last modification of the decree, with their circumstances at the time the modification at issue was sought.[17]

---

[13] See *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009).

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

In this case, James has the burden of demonstrating a material change in circumstances. We conclude that he has met his burden. In reaching this conclusion, we examine James' and Kari's financial circumstances at the time of the decree and now, and we note that James is making significantly less income and Kari is making a higher income.

Kari argues that James' lower income is due to his leaving a high-paying Omaha job and relocating to a different job with a startup company and that he should not be allowed to rely on those actions to pay her less in alimony. We disagree on this record.

There is no evidence in the record to show that James' decision to relocate for a higher-paying job was unreasonable. There is nothing in the record to suggest that James' employment was terminated due to the risky nature of the startup company he began to work for; indeed, the record at the modification hearing suggests that the company was still operating at that time. Instead, the record shows only that James' employment was terminated for "unsatisfactory work performance." The nature of that apparently unsatisfactory performance is not set forth in the record, with James' testifying that he never received any negative feedback and Kari's testifying that she lacked firsthand knowledge as to why James' employment was terminated.

Kari also testified that she did not know firsthand what efforts James had made to find new employment upon his return to Omaha. The only evidence on that point is James' testimony that he was unable to get hired back at his old job and that he applied for two other openings in his field but was not hired. As a result, James began his consulting company. There is no evidence in the record that James failed to make reasonable efforts to find comparable employment or that his choice to begin a consulting company was made in an attempt to avoid his alimony obligation.

We do agree that Kari's employment and higher salary were contemplated by the parties at the time of the decree, but that

fact does not affect the result in this case. James' income, at least for now, has been significantly reduced due to the loss of his job and inability to find a comparable new job. This was a material change in circumstances not contemplated by the parties at the time of the decree.

In such instances, we review the decision of the district court de novo but will reverse only for an abuse of discretion. While a different judge might have reached a different result, we see no abuse of the discretion given to the district court. Kari's third and final assignment of error is without merit.

CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.