Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:10 PM CDT

- 860 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

Rafael A. Vargasfontanez, also known
as Rafael A. Vargas, appellee, v.
Samantha Vargas, appellant.

___ N.W.3d ___

Filed May 14, 2024.    No. A-23-398.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support or a modification of an existing order of support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of discretion.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Child Support: Rules of the Supreme Court: Words and Phrases.** The Nebraska Child Support Guidelines provide that in calculating the amount of support to be paid, the court must consider the total monthly income, defined as the income of both parties derived from all sources, except all means-tested public assistance benefits and payments received for the children of prior marriages.

4. **Child Support: Rules of the Supreme Court: Presumptions.** It is clear that all income from employment, whether full time or part time, must be included in the initial calculation, which then becomes a rebuttable presumption of appropriate support. A parent who believes that the inclusion of certain income would be unjust or inappropriate may rebut the presumption by offering evidence in support of his or her position that a deviation from the guidelines is warranted for that reason. A determination whether to include income from a second job should be made on a case-by-case basis, in the context of whether a deviation from

- 861 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

the Nebraska Child Support Guidelines by exclusion of such income is necessary to achieve a fair and equitable child support order.

5. **Divorce: Property Settlement Agreements: Final Orders.** A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including a settlement agreement and parenting plan incorporated therein, is determined as a matter of law from the four corners of the decree itself.

6. **Divorce: Judgments: Intent.** The meaning of a decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation.

7. ____: ____: ____. Effect must be given to every part of a decree, including such effect and consequences that follow the necessary legal implication of its terms, although not expressed.

8. **Child Custody: Visitation.** Where a parenting plan effectively establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement.

9. **Alimony.** The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate.

10. **Divorce: Alimony.** In weighing a request for alimony, the court may consider all the property owned by the parties when entering the decree.

11. **Alimony: Appeal and Error.** In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as the trial court did, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. Further, an appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record.

12. **Alimony.** The main purpose of alimony is to assist a former spouse for a period necessary for the individual to secure his or her own means for support. The ultimate criterion is one of reasonableness.

Appeal from the District Court for Sarpy County: NATHAN B. COX, Judge. Affirmed as modified.

James Walter Crampton for appellant.

James A. Adams, of The Law Offices of James A. Adams, P.C., L.L.O., for appellee.

- 862 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

Pirtle, Chief Judge, and Riedmann and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Samantha Vargas (Samantha) appeals the Sarpy County District Court's decree dissolving her marriage to Rafael A. Vargasfontanez (Rafael), also known as Rafael A. Vargas, and awarding her child support and alimony. Samantha assigns that the district court abused its discretion in improperly calculating her income, using an equal division of parenting time to calculate child support, and awarding her $1 per month in alimony. We find the district court abused its discretion in its calculation of Samantha's income, and we modify its child support order accordingly. We otherwise affirm the district court's decree.

## BACKGROUND

Samantha and Rafael married in 2002. They had two children during the marriage: one born in 2005, and the other born in 2006. The older child reached the age of majority during the pendency of this appeal.

On July 6, 2021, Rafael filed a complaint for the dissolution of marriage. Trial was held on November 1, 2022. The parties agreed that only two issues needed to be decided at trial: child support and alimony. Accordingly, we limit our recitation of facts and our analysis to these two issues.

*Samantha's Work History*.

When Samantha and Rafael first married, Samantha worked as a daycare teacher and a licensed general contractor for a custom home building company that the parties owned. After the parties moved to Nebraska for Rafael's job in the U.S. Air Force, Samantha returned to school to get her second bachelor's degree in education. She explained at trial that she received a "military spouse scholarship to do the majority of" her second bachelor's degree; although we note that Rafael indicated this degree was obtained by using his "GI bill." In

- 863 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

2018, she obtained her master's degree in education, specializing in teaching "K through 6" mathematics.

Samantha currently works as an elementary school teacher. She has been an elementary school teacher for 7 years in total. She first taught elementary school in Nebraska but had to quit when the parties moved to Guam. Between 2016 and 2019, Samantha taught elementary school in Guam for the Department of Defense Education Activity (DoDEA), in which her annual pay began at $68,000 and increased to $84,000 by the time she and Rafael moved to Rhode Island for Rafael's job.

Samantha worked as a substitute teacher while in Rhode Island and when the parties returned to Nebraska in 2020. As a substitute teacher in Rhode Island, Samantha earned $90 a day. In Nebraska, Samantha earned $165 a day as a substitute teacher.

In 2021, Samantha applied for two jobs in Nebraska, one as the education liaison for the Offutt Air Force Base and another as an elementary school teacher with Bellevue Public Schools. The education liaison position required a master's degree and experience teaching for the DoDEA. The liaison position paid between $70,000 and $80,000 per year. Samantha testified at trial that she felt she was qualified for the position. However, by the time she was offered an interview, she had already accepted her current job with Bellevue Public Schools, where she makes approximately $58,000 per year.

At trial, Samantha explained that although her current salary may be approximately $58,000, she anticipated it will be lower in the future, because she no longer intended to teach summer school. Evidence was admitted that showed Samantha's salary for the 2022-23 school year was composed of a base salary of $51,997 plus a recognition bonus of $6,700. The salary schedule reflected an additional year of teaching would result in a base salary of $53,881. Three of Samantha's monthly paychecks were admitted into evidence,

- 864 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

which reflected summer school earnings of $3,927, training income of $975, and her base salary plus recognition bonus of $4,485.17 monthly. Samantha testified that the training income was not recurrent.

Both Samantha and Rafael agreed that Samantha's base pay for 2022-23 was $58,697. Rafael testified that when his attorney calculated Samantha's income, "based on the contract and the school year, on top of the summer job," she makes $5,706 per month, which calculates to $68,472 annually. Rafael explained his lawyer had calculated the number based on the information they received in discovery. He used her base salary of $58,697 and added $9,775, which is the amount he claimed Samantha made teaching summer school. Samantha testified, however, that she made $3,900 teaching summer school and $975 from a one-time training. The record contains a paystub for the pay period July 1 through July 31, 2022, which reflects 102 hours for summer school for a total payment of $3,927. Our record does not contain a June paystub to indicate whether Samantha also received this amount in June; however, her year-to-date earnings on her July paystub would indicate that she did not.

*Rafael's Employment.*

Rafael is currently a colonel stationed at Offutt Air Force Base. For his work duties, he is put on "alert duty" for 2 weeks every 6-week period. Rafael testified at trial that despite the district court's temporary order providing a 50-50 parenting time split, his alert duty impacted his parenting time from the temporary order's issuance in September 2021 to April 2022. After Rafael was promoted to colonel in 2021, he was supposed to assume the duties of a team chief, but first he needed to complete several months of "reps, going on alert, and so on." The only way to do that was "bouncing from one team to the other, oftentimes pulling alert duties back to back from one team to the other." Since April 2022, Rafael has been assigned a team, and he now has a predictable schedule for his alert duty.

- 865 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

Rafael submitted a document that was admitted into evidence that forecasted his 2023 alert duty. He estimated that his alert duty would reduce his parenting time from 182.5 days to 151 days. Rafael countered, however, that he could be moved to a billet that does not require alert duty. He described that he recently developed a medical condition in his left eye, which could potentially remove him from his role as team chief on flying duties. If removed from his role, he would have to move billets and would not be responsible for alert duty. Rafael testified that if he transferred billets because of his eye condition, or for other reasons, he would be able to realize his full parenting time. He confirmed that he is eligible to retire in 2024, and if he did so, he would be able to realize his full parenting time.

In addition to the parenting time issues Rafael had with his alert duty, Rafael explained that he had other parenting time problems as well. Evidence was submitted that showed the parties had adjusted parenting time schedules to help the minor children better acclimate. Rafael testified that he had relationship difficulties with the minor children from September 2021 to June 2022, which further impacted his parenting time. He testified that during that time, he sought a family counselor that worked with him and the minor children. Since then, they have repaired their relationship, and his parenting time has normalized.

Samantha testified that she did not think Rafael's parenting time increased after his alert duty schedule normalized and after he repaired his relationship with the minor children. She offered into evidence a parenting time document that included Rafael's parenting time in 2022 through October. Samantha projected what his parenting time would be for the remainder of the year, which allocated Rafael only 14 days of parenting time between November 6 and December 31. Samantha did not document why there were deviations from the district court's temporary order of a week-on-week-off parenting time schedule. She claimed the document showed that Rafael had

- 866 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

spent only 107 days with the minor children, but when adding the numbers she allocated to him for 2022, there were 109 days.

*Alimony.*

Samantha requested the district court award her $2,500 per month in alimony until Rafael retires. Once Rafael retires, Samantha anticipated that she would receive $2,500 per month from Rafael's retirement pay per the terms of their property settlement agreement. Because Samantha and Rafael were married for 20 years, and Rafael served in the military during all of that time, Samantha is entitled to approximately 40 percent of Rafael's retirement. Samantha will also retain lifetime health care benefits, lifetime commissary privileges, and base-exchange privileges. Rafael requested the district court consider all these benefits in its alimony analysis.

Samantha explained her finances and why she thought she deserved alimony. Under the terms of the court's previous temporary order, she was receiving $965 per month in child support and $750 per month in spousal support. She testified she had to sell things, work summer school, and dip into her savings to get by. Samantha also explained that she was paying for the children's piano lessons, which was part of the reason she taught summer school, because the lessons cost $1,260 per semester. She conceded that Rafael now pays 77 percent of the piano lessons.

Under the terms of the party's property settlement agreement, Samantha receives full rights to the marital home and retains the "VA entitlement" on the home. Rafael explained this was made as a concession to Samantha, so that she can keep the low interest rate on the home's mortgage, instead of having to refinance. Samantha testified during her deposition that she pays off her credit card every month and does not accumulate credit card debt. She acknowledged at trial that this remained true, and the only debt she would have after the property settlement agreement would be the mortgage on the marital home.

- 867 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

*District Court's Decree of Dissolution.*

The district court dissolved Samantha and Rafael's marriage. It adopted and incorporated the parties' proposed parenting plan in which they would have "joint legal and physical custody (50:50)" of the minor children. It also found the parenting plan to be in the best interests of the minor children. Each parent's specific parenting time was subject to the parenting plan attached to the order.

The district court ordered Rafael to pay $687 per month in child support for the two children, which would be reduced to $478 for one child. Pursuant to the Nebraska Child Support Guidelines, the district court found that Rafael would cover 69 percent of all reasonable and necessary direct expenditures made solely for the parties' minor children, such as clothing and extracurricular activities, and Samantha would cover 31 percent. Medical, dental, orthodontia, optometry, counseling, therapy, mental health, and other health-care-related services would follow the same allocation.

The district court ordered Rafael to pay $1 per month for 36 months in alimony. Samantha was awarded 38.91 percent of Rafael's retirement pay.

The district court adopted the parties' proposed property settlement agreement. Each party was awarded $705,526 in net marital assets. Each party kept their respective vehicle. Included in Samatha's award was $97,235 from the parties' emergency savings account, as well as Rafael's entire thrift savings plan, which totaled $117,065. Samantha was also awarded the marital home but did not have to refinance it.

*Parties' Parenting Plan*.

As stated above, the district court adopted the parties' proposed parenting plan. The plan provides "[t]he parties shall share the joint physical custody (50:50 timeshare) of the parties' minor children." The parties were to "alternate parenting time week-to-week" with the children, switching homes on Sunday at 4 p.m. The plan sets forth an alert duty provision

- 868 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

granting Rafael 7 consecutive days of parenting time following his return, after which the parties would resume the Sunday-to-Sunday schedule.

The parenting plan allocated parenting time for holidays based on odd-numbered and even-numbered years. Both parties were also awarded 2 weeks of parenting time for vacation during the summer, which may run consecutively. The parenting plan detailed that "[h]oliday parenting time will supersede the regular parenting time and vacation time and may not be pre-empted unless the parties mutually agree to do so." The parties agreed that the parenting time/possession schedule is meant to be "a default arrangement to guide the parties in the event of dispute involving those matters" and that if a dispute arises, "the default plan should govern the parties."

*Samantha's Postdecree Motions.*

After the district court issued its decree, Samantha filed two motions with the district court. She filed a motion for order nunc pro tunc, claiming that the district court failed to change the year on the signature line of the decree to 2023, which meant that Samantha would not be considered married to Rafael for 20 years, thus affecting her entitlement to military benefits. She also filed a motion for a new trial or to alter or amend. As relevant to this appeal, Samantha claimed that the district court assigned an income figure to her that was not supported by credible evidence and failed to consider that parenting time would not be equal between both parents in its child support calculation.

The following colloquy regarding calculation of Samantha's income occurred at the hearing on Samantha's motions:

> [Samantha's counsel:] I mean, no disrespect, but if you're saying that she should have — we should include her summer school income, that could be true, and I could understand the logic there, but then you'd have to spread that extra income out over the 12 months and not just include it as if she could make an extra three weeks of income every month.

- 869 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

THE COURT: But it was that — it was precisely that that the Court was doing was applying that to her total — her total income for the year, not monthly income, because, again, when you get into teacher salaries it kind of becomes a little bit interesting because they don't work every month usually. But that was the intention was to include that as part of her annual salary.

[Samantha's counsel:] Well, in that case then the Court miscalculated it, because the numbers don't match up.

THE COURT: Okay. Any other arguments?

The district court granted Samantha's motion for order nunc pro tunc and corrected the date on the signature line of its decree. It denied her motion for new trial or to alter or amend. Samantha appeals.

## ASSIGNMENTS OF ERROR

Samantha assigns the district court abused its discretion in (1) improperly calculating her income for child support and alimony, (2) calculating child support based on a 50-50 joint physical custody calculation, and (3) awarding Samantha alimony of $1 per month for 36 months.

## STANDARD OF REVIEW

[1,2] In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support or a modification of an existing order of support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of discretion. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

- 870 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

## ANALYSIS

*Samantha's Income Calculation.*

Samantha assigns the district court abused its discretion in calculating her income for purposes of the child support calculation. Her argument is twofold. First, she argues that her summer school earnings should not be included because she did not intend to teach summer school again. Second, she argues that the $6,255 monthly income used by the district court is not supported by any evidence in the record.

[3,4] The Nebraska Child Support Guidelines provide that in calculating the amount of support to be paid, the court must consider the "[t]otal monthly income," defined as the "income of both parties derived from all sources, except all means-tested public assistance benefits . . . and payments received for children of prior marriages." See Neb. Ct. R. § 4-204 (rev. 2020). See, also, Neb. Rev. Stat. § 42-364.16 (Reissue 2016). Addressing whether income from a parent's second job should be included in calculating income for child support purposes, the Nebraska Supreme Court stated:

> [I]t is clear that all income from employment, whether full time or part time, must be included in the initial calculation, which then becomes a rebuttable presumption of appropriate support. A parent who believes that the inclusion of certain income would be unjust or inappropriate may rebut the presumption by offering evidence in support of his or her position that a deviation from the guidelines is warranted for that reason. A determination of whether to include income from a second job should be made on a case-by-case basis, in the context of whether deviation from the guidelines by exclusion of such income is necessary to achieve a fair and equitable child support order. Relevant considerations include the previous history of employment, the qualifications for the second job, the extent to which the parent may be under employed in the primary job, the health of the

- 871 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

individual, the needs of the family, the rigors of the primary job and the second job, and all other circumstances. *Dueling v. Dueling*, 257 Neb. 862, 867-68, 601 N.W.2d 516, 520-21 (1999).

Samantha testified that she decided to teach summer school in 2022 because she was having a hard time making ends meet with the amounts awarded under the temporary order. She explained that she did not plan to teach summer school again because without a summer break, her stress level during the school year rose more quickly. There is no indication in the record that Samantha taught summer school in any other year. Applying the considerations set forth in *Dueling v. Dueling, supra*, we determine that Samantha rebutted the presumption that summer school income should be included in calculating her income for child support purposes and that the district court abused its discretion by including it.

There was evidence that Samantha's income would increase for the 2023-24 school year and that the salary schedule reflects at least an increase to $53,881. (We also note that the district court apparently used Rafael's future raise in calculating his income.) The evidence also supports a determination that a recognition bonus has been offered for at least the prior 2 years; therefore, we include the $6,700 recognition bonus with this amount for a total of $60,581 as Samantha's income for purposes of child support calculations, resulting in a monthly income of $5,048.

The district court used a monthly income of $6,255 for Samantha's income. We agree with Samantha that the record does not support this number. Although there was testimony that she applied for an educational liaison position at Offutt Air Force Base that paid between $70,000 and $80,000, she was not awarded the position. Samantha is an elementary school teacher; the fact that she was selected to interview for a position outside that area does not require that her earning capacity be based on what appears to be a unique position. Moreover, the remarks made by the district court at the

- 872 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

hearing on Samantha's motion for new trial or to alter or amend reveal that the court intended to calculate her income based upon her teaching salary and money earned teaching summer school. The calculations, however, were incorrect.

Finding that the district court abused its discretion in calculating Samantha's monthly income at $6,255, we vacate its child support calculation and modify it using $5,048.42 as Samantha's monthly income. This results in a child support payment by Rafael of $795 per month for two children and $554 for one child. A copy of the child support worksheets is attached to this opinion.

*Allocation of Parenting Time.*

Despite the parties' agreement in the parenting plan as to joint physical custody and 50-50 time with each parent, Samantha argues that the court abused its discretion in calculating child support on an equal division of custody. She claims the district court "simply ignored the provision[s] about" Rafael's alert duty, the makeup time in the parenting plan, and evidence about the actual number of overnights that the children are with each parent. Brief for appellant at 9. She argues the child support calculation based on equal custody is an abuse of discretion. Instead, she contends the child support calculation should be based on the projected time of possession (41.8 percent) or past possession (29.32 percent) (without a joint custody adjustment). We disagree.

[5-7] A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including a settlement agreement and parenting plan incorporated therein, is determined as a matter of law from the four corners of the decree itself. See *Vyhlidal v. Vyhlidal*, 311 Neb. 495, 973 N.W.2d 171 (2022). The meaning of the decree must be determined from all parts thereof, read in its entirety, and must be construed as a whole so as to give effect to every word and part, if possible, and bring all of its parts into harmony as far as this can be done by fair and reasonable interpretation. *Id*. Effect

- 873 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

must be given to every part thereof, including such effect and consequences that follow the necessary legal implication of its terms, although not expressed. *Id*. Because the parties attached a parenting plan to their marital settlement agreement that the court incorporated into the decree, we consider the documents together in determining the meaning of the decree.

[8] Where a parenting plan effectively establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). In several cases, the appellate court has looked past the labels used by the trial court when describing the physical custody arrangement and has focused instead on the actual terms of the parenting plan adopted by the court. *Id*. Such cases illustrate that it is the trial court's allocation of parenting time that drives the physical custody label, not the other way around. *Id*.

Here, the district court did not abuse its discretion in assigning 50-percent parenting time to each parent for the child support calculation. Both Samantha and Rafael agreed that an equal division of physical custody was in the best interests of the children. The parenting plan, which must be read in its entirety and bring all parts into harmony as far as this can be done by fair and reasonable interpretation, provides for "joint physical custody (50:50 timeshare)." See *Vyhlidal v. Vyhlidal, supra*.

The parenting plan describes a 50-50 timeshare in which the parties will alternate week-to-week parenting time that begins on Sunday and ends the following Sunday. It accounts for Rafael's alert duty and allows him 7 consecutive days of parenting time after his alert duty before the week-to-week schedule resumes. Rafael had his 2023 alert duty schedule at the time of trial, so the parties could have crafted a parenting plan that incorporated his alert duty schedule to reduce the 50-50 division to which they agreed, but they did not. Instead, the parties merely detailed that if Rafael had alert duty, he

- 874 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

was to receive 7 consecutive days of parenting time when he returned.

Samantha now claims that because Rafael will not have the children 50 percent of the time, the district court abused its discretion in calculating child support as if he will. But Samantha agreed to a joint custody arrangement on a 50-50 basis, knowing that alert duty would be a factor. We further note that although Rafael testified that his 2023 alert duty schedule would decrease his parenting time to 151 days, he could be moved to a billet that does not require alert duty, or he could be removed as a team chief due to an eye condition he recently developed, which also would eliminate his alert duty.

Given the uncertainty of Rafael's prospective alert duty and the parties' agreement to a 50-50 share of parenting time, we find no abuse of discretion by the district court in electing to utilize the percentage agreed to by the parties in their parenting plan.

Samantha also argues that the district court should have used Rafael's 2022 parenting time to calculate parenting time percentages in the child support calculation without the joint custody adjustment. Since September 2021, the parties operated under a virtually identical parenting plan pursuant to a temporary order. At trial, Samantha offered an exhibit she created that tracked the specific times the children were with Rafael in 2022 and projected the times for November and December. She contends that because Rafael had only 107 days of parenting time in 2022, the district court abused its discretion when it used the joint physical custody worksheet and should have assigned his parenting time at 29.32 percent. See Neb. R. Ct. § 4-212 (rev. 2011) (describing that it is within district court's discretion to use joint custody worksheet when parenting time is between 109 and 142 days per year). We note, however, that Samantha erroneously calculated the number of days at 107 because her exhibit reflects 109 days.

- 875 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

Rafael explained at trial that after his promotion to colonel, he had to participate in additional alert duties before he was assigned a team, which disrupted his parenting time. He has since been assigned to a team and testified his parenting time has increased since April 2022. He also offered as an exhibit a 2022 calendar that set forth his scheduled parenting time, his alert duty, and other variations from the temporary parenting plan. The notations regarding deviations were supported by another exhibit composed of emails between Samantha and Rafael depicting the conflict that existed regarding changes to the parenting plan. Despite Rafael's not exercising all of his parenting time, we find no abuse of discretion by the district court in not relying upon historic evidence of Rafael's parenting time, given the reasons for the deviation, his testimony of his prospective alert duty, and the parties' agreement to equally share parenting time.

*Alimony*.

Samantha assigns the district court abused its discretion by awarding her $1 per month for alimony. She argues that the district court should have awarded alimony equal to the retirement pay she will receive from Rafael upon his retirement because it will stabilize her income. She emphasizes her career interruptions that arose from following Rafael's career to support her claim for alimony.

[9,10] Under Neb. Rev. Stat. § 42-365 (Reissue 2016), "[t]he purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances . . . make it appropriate." See *Radmanesh v. Radmanesh*, 315 Neb. 393, 996 N.W.2d 592 (2023). The district court may order alimony

> as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational

- 876 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

§ 42-365. Alimony should not be used to equalize the parties' incomes or to punish one of the parties. *Radmanesh v. Radmanesh, supra*. In weighing a request for alimony, the court may consider all the property owned by the parties when entering the decree. *Id*.

[11,12] In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as the trial court did, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Radmanesh v. Radmanesh, supra*. Further, an appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record. *Id*. The main purpose of alimony is to assist a former spouse for a period necessary for the individual to secure his or her own means for support. *Binder v. Binder*, 291 Neb. 255, 864 N.W.2d 689 (2015). The ultimate criterion is one of reasonableness. See *id*.

Although the length of marriage and disparity of incomes favors an award, we cannot find that the district court abused its discretion in awarding Samantha alimony of $1 per month. All of a party's resources are relevant to their need for alimony. See *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). Despite the interruptions to her career, Samantha's career appeared to benefit from her marriage. Samantha was awarded a scholarship to pursue a second bachelor's degree because she was a "military spouse," and Rafael had remaining money from his "GI bill." Samantha also obtained a master's degree during the marriage, which increased her earning capacity. She gained valuable experience working under the DoDEA, which she noted made her qualified for higher earning positions, such as the education liaison position. Samantha experienced interruptions in her career for Rafael's benefit,

- 877 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

but those interruptions have not appeared to adversely affect her ability to engage in gainful employment. See *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995).

Furthermore, when weighing a request for alimony, a district court can consider all the property owned by the parties when entering the decree. See *Brozek v. Brozek, supra*. When Rafael retires, Samantha will receive 38.91 percent of Rafael's retirement pay each month, which will substantially increase her monthly income. Samantha received over $705,526 in assets from the division of the marital estate, including $97,235 from the parties' emergency savings account and $117,065 from Rafael's thrift savings plan. Samantha was also awarded the marital home and retains Rafael's "VA entitlement" on the home, which kept a low interest rate attached to her monthly mortgage payments. Pursuant to a joint custody calculation, Rafael will be responsible for a majority of the minor children's expenses; therefore, Samantha is not responsible for paying the full cost of the children's expenses, such as piano lessons, which she testified was one of the costs that pushed her to teach summer school.

Altogether, Samantha is employed, testified that she can pay her expenses, and has the means for her own support. The district court did not abuse its discretion in awarding Samantha alimony of $1 per month.

## CONCLUSION

For the foregoing reasons, we modify the district court's award of child support as reflected above. The apportionment of the children's expenses is likewise modified with Samantha responsible for 28 percent of the expenses and Rafael responsible for 72 percent. We otherwise affirm the district court's decree.

AFFIRMED AS MODIFIED.

(*See pages 878-880 for child support worksheets.*)

- 878 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

Case Name: Vargas v. Vargas
Worksheet 1 - Basic Income and Support Calculation

Mother: Single / 2 Exemptions / Regular Employment
Father: Single / 2 Exemptions / Regular Employment

| Line | Description | Mother | Father |
|------|-------------|--------|--------|
| 1 | Gross Earned Taxable Income | $5,048.42 | $15,376.09 |
| 1 | Gross Unearned Taxable Income | $0.00 | $0.00 |
| 1 | Tax-Exempt Income | $0.00 | $0.00 |
| 2.a | Taxes - Federal | $440.48 | $2,818.47 |
| 2.a | Taxes - Nebraska | $169.34 | $772.48 |
| 2.b | FICA - Social Security / Railroad Retirement* | $313.00 | $871.10 |
| 2.b | FICA - Medicare | $73.20 | $222.95 |
| 2.c | Retirement | $201.94 | $615.04 |
| 2.d | Previously Ordered Support | $0.00 | $0.00 |
| 2.e | Regular Support for Other Children | $0.00 | $0.00 |
| 2.f | Health Insurance Premium for Parent | $0.00 | $0.00 |
| | Other Deductions | $0.00 | $0.00 |
| | Child Tax Credit | ($0.00) | ($0.00) |
| 2.g | Total Deductions | $1,197.96 | $5,300.04 |
| 3 | Net Monthly Income | $3,850.46 | $10,076.05 |
| 4 | Combined Net Monthly Income | $13,926.51 | |
| 5 | Combined Net Annual Income | $167,118.12 | |
| 6 | Each Parent's Percent | 27.65% | 72.35% |
| 7 | Monthly Support from Table (2 Children) | $2,397.00 | |
| 8 | Health Insurance Premium for Children | $0.00 | $31.04 |
| 9 | Total Obligation | $2,428.04 | |
| 10 | Each Parent's Monthly Share | $671.35 | $1,756.69 |
| 11 | Credit For Health Insurance Premium Paid | ($0.00) | ($31.04) |
| 12 | Each Parents' Final Share (2 Children, rounded) | $671.00 | $1,726.00 |

- 879 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

Worksheet 4 - Number of Children Calculation (final shares are rounded to the nearest whole dollar)

| No. Children | Table Amt. | Table + Health Ins. | Mother's Share of Total | Father's Share of Total | Mother's Final Share | Father's Final Share |
|---|---|---|---|---|---|---|
| 2 | $2,397.00 | $2,428.04 | $671.35 | $1,756.69 | $671.00 | $1,726.00 |
| 1 | $1,677.00 | $1,708.04 | $472.27 | $1,235.77 | $472.00 | $1,205.00 |

Worksheet 3 - Joint Physical Custody (2 Children)

| Line | Description | Mother | Father |
|---|---|---|---|
| 1 | Each Parent's Percent Contribution | 27.65% | 72.35% |
| 2 | Monthly Support (Worksheet 1 Line 7) | $2,397.00 | |
| 3 | Joint Physical Support (Line 2 * 1.5) | $3,595.50 | |
| 4 | Each Parent's Share (Line 1 * Line 3) | $994.16 | $2,601.34 |
| 5 | No. Days Custody | 182.5 | 182.5 |
| 6 | Percentage of Year (Line 5 / 365) | 50% | 50% |
| 7 | Mother's Obligation to Father | $497.08 | |
| 8 | Father's Obligation to Mother | | $1,300.67 |
| 9 | Father's Obligation for Support | $803.59 | |
| 10 | Children's Health Insurance Premium | $0.00 | $31.04 |
| 11 | Combined Children's Health Insurance Premiums | $31.04 | |
| 12 | Each Parent's Share of Premium (Line 11 * Line 1) | $8.58 | $22.46 |
| 13 | Amount of Premium Paid (Line 10) | $0.00 | $31.04 |
| 14 | Amount Owed to Other Parent (Line 12 - Line 13) | $8.58 | $0.00 |
| 15.a | Which Parent Owes Basic Support | Father | |
| 15.b | Which Parent Owes for Health Insurance | Mother | |
| 15.c | Does the Same Parent Owe on Lines 15a and 15b | No | |
| 16 | Total Support Owed by Father (rounded) | $795.00 | |

- 880 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
VARGASFONTANEZ v. VARGAS
Cite as 32 Neb. App. 860

Worksheet 3 - Joint Physical Custody (1 Child)

| Line | Description | Mother | Father |
|------|-------------|--------|--------|
| 1 | Each Parent's Percent Contribution | 27.65% | 72.35% |
| 2 | Monthly Support (Worksheet 1 Line 7) | $1,677.00 | |
| 3 | Joint Physical Support (Line 2 * 1.5) | $2,515.50 | |
| 4 | Each Parent's Share (Line 1 * Line 3) | $695.54 | $1,819.96 |
| 5 | No. Days Custody | 182.5 | 182.5 |
| 6 | Percentage of Year (Line 5 / 365) | 50% | 50% |
| 7 | Mother's Obligation to Father | $347.77 | |
| 8 | Father's Obligation to Mother | | $909.98 |
| 9 | Father's Obligation for Support | $562.21 | |
| 10 | Children's Health Insurance Premium | $0.00 | $31.04 |
| 11 | Combined Children's Health Insurance Premiums | $31.04 | |
| 12 | Each Parent's Share of Premium (Line 11 * Line 1) | $8.58 | $22.46 |
| 13 | Amount of Premium Paid (Line 10) | $0.00 | $31.04 |
| 14 | Amount Owed to Other Parent (Line 12 - Line 13) | $8.58 | $0.00 |
| 15.a | Which Parent Owes Basic Support | Father | |
| 15.b | Which Parent Owes for Health Insurance | Mother | |
| 15.c | Does the Same Parent Owe on Lines 15a and 15b | No | |
| 16 | Total Support Owed by Father (rounded) | $554.00 | |